Law Offices of
WENDIE L. ELOVICH, P.A.
180 White Road, Suite 204
Little Silver, NJ   07739
(732) 842-3224
(732) 842-3494 – Facsimile
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____ _____

| | |
|---|---|
| JEFFREY THOMPSON, :<br><br>          Plaintiff, :<br><br>        v. :<br><br>CITY OF NEWARK POLICE :<br>DEPARTMENT , DIRECTOR ANTHONY<br>AMBROSE, CHIEF IRVING BRADLEY, :<br>DEPUTY CHIEF SAMUEL DEMAIO, DEPUTY<br>CHIEF GREGG QUACKENBUSH, CAPTAIN :<br>RICHARD CUCCOLO, CAPTAIN DOMINGUS<br>SALDIDA, CAPTAIN HARVEY SIMPSON, :<br>LIEUTENANT TIJUANA JONES BURTON,<br>CAROLINE McINTOSH, CAPTAIN RONALD :<br>KINDER, LIEUTENANT PALMAR AMOS,<br>LIEUTENANT AMILKER VELEZ, LIEUTENANT :<br>ULMAR ABDUL HAKEEM, LIEUTENANT<br>MANUEL CARILLO, LIEUTENANT VICTOR :<br>CUGLIARI, SERGEANT MARLIN EASTER,<br>SERGEANT ANTHONY COSTA, and JOHN :<br>AND JANE DOES 1-10,<br>                      :<br>         Defendant s. :<br>_____ _____ : | Civil Action No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, JEFFREY THOMPSON, by his attorney, Law Offices of WENDIE L. ELOVICH, P.A., as and for a Complaint against Defendants, alleges and says, as follows:

## GENERAL ALLEGATIONS

1.     Plaintiff, JEFFREY THOMPSON, (hereinafter "Plaintiff," "Thompson" or "Employee") was a Police Officer in the Newark Police Department from the time of 1996.  For the times mentioned, Thompson resided at 419 South 6th Street, Newark, New Jersey.   After termination, he had to sell his house and move to 40-1/2 3rd Street, Newark, New Jersey.

2.     Defendant, City of Newark (hereinafter "Employer"), has its principal office at 920 Broad Street, Newark, New Jersey 07102.  The Employer is liable, *respondeat superior*.

3.     As impacts Plaintiff's facts, the City of Newark Police Department is an Agency of the Employer, but it provides for its maintenance, regulation and control through the Mayor, Administrator, City Council, and, more specifically, the Director Anthony Ambrose, Chief of Police Irving Bradley, Deputy Chiefs Samuel DeMaio and Deputy Chief Gregg Quackenbush, Commander of Internal Affairs Richard Cuccolo, Commander of the Second Bureau Domingos A. Saldida, and all those who sat on Trial Boards, including Deputy Chief Gregg Quackenbush, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton and Caroline McIntosh.

4.     Upon information and belief, this is a line of authority (Chain of Command) charged to monitor and control all police functions and ensure regulations for the governing of the force, and for the discipline of its members or any termination, pursuant to Plaintiff's contract and the law.

5.     Plaintiff, Thompson, presents as an African American employee and, for the times alleged, he has suffered severe retaliation for complaining of harassment, or

for seeking a resolution of discriminatory activity targeted to him by Defendants as an African American mostly challenging the authority of Caucasian or higher ranked employees during times he had injuries or a medical condition which put him out on sick leave or required accommodation to which he was entitled.

6.     Plaintiff was wrongfully terminated due to bad motives, retaliation and pretext, race discrimination on the part of the Employer and the numerous individual Defendants, who alternated between filing false charges, failing to investigate Plaintiff's complaints, and, then, conspired to have Plaintiff terminated.  The individual Defendants include those previously named and, also, Captain Ronald Kinder, Lieutenants Palmar Amos, Amiker Velez, Abdul Hakeem, Manuel Carillo, Victor Cugliari, Sergeants Marlin Easter and Anthony Costa.

7.     Before termination, Plaintiff had a liberty and property interest to notification and a full police trial, but he was intentionally deprived of his substantive or due process rights in violation of the U. S. Constitution, Civil Service Act, N.J.S.A., Sect. 11A:1-1 and, also, his Collective Bargaining Agreement.

8.     Plaintiff has become stigmatized in the constitutional sense.  These Defendants do not have qualified immunity because their conduct violates constitutional and statutory or contract rights so basic a reasonable person in their respective positions would have known City of Newark Police Officers cannot be terminated without a showing of just cause, and only after receiving adequate notice and a full hearing known as a police trial.

9.     In terms of the actual adverse action, Plaintiff avers that any known procedure for remedying harm to his protected interest met those requirements.  There

was no notice nor opportunity for a police trial for the false or pretextural charges pending against Plaintiff that led to his termination.

10.     Further, Defendants' violations were intentional and deliberate in light of the very fact that the Employer's agents had hand delivered and then sent, via certified mail, a written notification for a Fitness for Duty evaluation at the Occupational Center in Newark for a later time, but, then, purposely failed to send any notice for a police trial which was potentially pending against Thompson.

11.     As proof, on February 24, 2006, at or about 7:00 P.M., Sergeant Venancio appeared at Plaintiff's residence and advised him he needed to sign for a letter giving notification to appear at Occupational Health Services on March 11, 2006, but he never mentioned any police trial or served any written notification for the police trial.

12.     After that time, Plaintiff picked up a single certified postal mailing advising only of requirements for a Fitness for Duty evaluation, not a police trial notification.

13.     Thereafter, Defendants intentionally abused their government authority through an arbitrary termination of Plaintiff's employment on February 27, 2006 pretending that he should have appeared for a police trial.

14.     Their authority was purposely utilized as an instrument of oppression knowing that Plaintiff had a property interest in his job, with family and children depending upon him to feed and support them, as he always had.

15.     Plaintiff had no opportunity to be heard nor defend himself.

16.     The Employer intentionally chooses to ignore its own protocol, procedures, rules and regulations and permits its Chain of Command, Internal Affairs

Division, Medical Services Officers and, also, the Second Bureau (or other Precincts) to harass and harm Officers like this Plaintiff for an intentional discriminatory scheme.

17. Defendant, City of Newark, through John and Jane Does 1-10, knew, or were possessed of knowledge, of the material facts to harm this Plaintiff and did nothing to properly oversee or control their Police Department operations, where Plaintiff reported, and refused to supervise, investigate or provide any corrective action, although a discriminatory hostile work environment festered to establish constant false charges, with no real violation of the Department Code, nor any possibility of criminal laws.

18. Thus, Plaintiff ended up with false preliminary charges, which turned into a permanent false record for termination, and, then, Defendants, including any John and Jane Does 1-10, acted egregiously, as official conduct, to shock the conscience of anyone insofar as intentionally depriving Plaintiff of any notice and opportunity for a potential hearing and a police trial or to defend himself.

19. All such Defendants, including John and Jane Does 1-10 must be deemed "reasonable officials" to fully comprehend their actions were calculated to deprive Plaintiff of his constitutional and statutory rights, and his or her actions clearly violated Plaintiff's established rights under his Contract.

20. All Defendants' actions must be examined, individually, and this includes the aforesaid Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingus Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Lieutenant Ronald Kinder, Sergeant Palmar Amos, Sergeant Amilker Velez,

Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10.  Said Defendants are, respectively, residents of the State of New Jersey and are jointly and severally liable.

## JURISDICTION AND VENUE

21.     Plaintiff has been subject to violation of his Federal Constitutional rights of due process and equal protection of the law pursuant to 42 U.S.C. §1983, and for claims under the Fourteenth Amendment.  There is pendent jurisdiction under N.J.S.A. §11A:1-1 and for claims brought under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 TO 10:5-42, et seq., and, also, for breaches of the Plaintiff's Collective Bargaining Agreement and other common law causes of action stated herein.

22.     Events giving rise to Plaintiff's actions occurred in the District of New Jersey and venue properly lies in this District pursuant to 28 U.S.C. Sec. 1391(a)

## JURY DEMAND

23.     Plaintiff demands a trial by jury in this action.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

24.     Plaintiff, Jeffrey Thompson, repeats and realleges the General Allegations of the Complaint, as if set forth at length herein.

25.     As aforesaid, Plaintiff, Jeffrey Thompson, has worked for the Employer since 1996.  He accepted all assignments until 1999 when he was diagnosed with atrial fibulation, hospitalized and kept out of work for approximately six months.

26.     On being hired, Plaintiff did not have any medical condition and physicians tried to find out exactly why he had developed heart problems and how to treat him.

27.     Thompson returned to work but continued to take his medications, as prescribed.  He found a discriminatory bias as an African American employee, then presenting with an ongoing medical condition within the Employer's workforce.

28.     Time elapsed and Thompson had other work-related injuries, including an automobile accident, while on duty.  This is fairly common, but City physicians did not allow him to obtain a proper treatment course.  Plaintiff found he could not even get a needed MRI evaluation for a back injury.  Thompson continued to work out of fear of losing his job and not being able to support his family.

29.     Through 2004, Plaintiff's tour kept changing with different assignments. Thompson acquiesced to each change, but he continued to take prescribed medications by reason of working with ongoing injuries and needing the pain and heart medications to perform his work most days.

30.     For these times, the Employer's agents knew, or should have known, Plaintiff's injuries and his daily medication regimen.

31.     On October 23, 2004, Captain Samuel DeMaio observed Plaintiff inside a police vehicle, in an unconscious state.  The medication had finally taken a toll on Plaintiff.    On the spot, Plaintiff was suspended for twelve days.  Plaintiff's gun and badge were taken.  Thereafter, Thompson was transferred.

32.     Plaintiff's reinstatement did not occur until November 8, 2004, and Thompson's tour was changed.  This time, Plaintiff was transferred to the North District for work, now known as the Second Bureau.

33.     Thompson still could not get medical attention or accommodation, but, rather, at November 16, 2004, Sergeant Palmar Amos of Medical Services, compelled Plaintiff to become evaluated for a Fitness for Duty evaluation at the Center for Occupational Health in Newark.

34.     Plaintiff inquired why he was subject to evaluation and the response from Sergeant Palmar Amos was that Plaintiff would likely be the subject of an administrative investigation.

35.     Thompson was informed he had no choice but to follow the instruction and Amos was the messenger, as if higher Officers made the decision, but it was plain the Sergeant played along for her own benefit knowing or should be knowing of the wrongdoing.

36.     There was further reprisal action on reassignment to the North District. Plaintiff was ordered to take vacation during January of 2005, although he was a nine (9) year veteran with seniority rights to elect his own vacation month.

37.     On January 7, 2005, Plaintiff had another serious heart episode, with ongoing tests and treatment.  His private physician put him out of work in combination with other consultants rendering evaluations and a proper written sick note was turned into the Employer's agents.

38.     Medical Services Supervisors had known Plaintiff's medical problems for years, but they were no more sympathetic to his needs and requirements than they had been in the past.

39.     Defendants routinely denied any true medical diagnosis existed for Thompson, although he was not subjected to physical/medical examination by any

competent physicians of the Employer's choice to determine his physical medical condition and prognosis.

40.   Instead, Thompson was racially profiled as an African American employee looking not to be working and as a "malingerer" or "fake." Plaintiff kept working despite his health problems and their blatant discriminatory profiling, which affected him in the workplace.

41.   Again, Defendant, Sergeant Palmar Amos, became the messenger to articulate bad faith motives to inform Thompson he was in trouble. Now, this Defendant pretended Plaintiff had not complied to his own physician's instructions to return to work.   Without being insubordinate, Thompson depicted all the true facts and documented submissions he made.

42.   On April 12, 2005, Plaintiff was once again ordered by Medical Services to respond to the Center for Occupational Health for a second Fitness for Duty evaluation, although he had been found fit only a short time earlier.

43.   For the times mentioned, Plaintiff tried to state he was being treated this way only due to bad motives and race discrimination on the part of the Employer or individuals associated with the Employer, and he complained that he confronted discriminatory, retaliatory motives and pretext, which required proper investigation, but his grievances and complaints were always flatly turned down.

44.   No discipline or corrective action ever occurred to the wrongdoers adversely impacting Plaintiff's work conditions.

45.   Plaintiff's written submissions were either torn up or ignored, as if he had no rights under his Collective Bargaining Agreement, although he experienced a pattern

and practice of violation of the following Articles of said Agreement between the City of

Newark and the Fraternal Order of Police, hereinbefore described as the "Contract":

1)   Article 1, Section 1, Recognition
2)   Article 14, Sick & Injured Leave
3)   Article 21, Maintenance of Standards
4)   Article 22, Sections 1 & 2, Management of Rights
5)   Article 23, Rules & Regulations
6)   Article 25, Extra Contract Agreements
7)   Article 28, Investigations
8)   Article 29, Sections 2 & 4, FOP Privileges & Responsibilities
9)   Article 30, Section 1 & 2, Discipline & Discharge
10)  Article 34, Fully Bargained Provisions
11)  Article 35, Duration
12)  Arbitration Agreement - sick leave and other provisions

46.    Through to the end, there was never any good faith effort to protect

Plaintiff from adverse, harassing or hostile treatment, discriminatory biased treatment,

disparate treatment, or impact, reprisal or retaliatory activity, bad faith motives or

pretext, although all individual Defendants were separately accountable to the Employer

for strict adherence to protocol, procedures, rules and regulations of the police force

purportedly in place to be enforced.

47.    Therefore, the Defendant Employer, through its agents, remains

responsible:

(a)    For all acts and conduct of the individually named agents within the scope

of their authority;

(b)    For failing to control their agents' conduct;

(c)    For permitting such agents to wear any police uniform or cloak of authority

and offering each one power to carry out his or her own mission, whether from the

South or North District, Second Bureau, Internal Affairs, Medical Services, or other

policymaking agencies, against Plaintiff;

(d)    For promoting discriminatory or adverse employment conditions for their own illegal objectives and to the detriment of the Plaintiff.

(e)    For trying to establish a discriminatory termination of the Plaintiff with both a false discipline record and psychological record of unfitness, without any reasonable basis or just cause.

48.    All Defendants, including Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingus Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Lieutenant Ronald Kinder, Sergeant Palmar Amos, Sergeant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10 (any or all of them), neglected their duties and covered up wrongdoing or failed to oversee Police Department activities and properly train and supervise Superiors in their Precincts, Medical Services or other Units or Agencies of the City of Newark so as to correct wrongdoing.

49.    There was no qualified immunity to protect the Defendants under all facts and circumstances of their official requirements and duties to carry out the law, not to violate it.

50.    For the times stated, Plaintiff became increasingly stigmatized in the workplace as an African American "malingerer" or fake, who did not want to work for his pay.

51.    Officials within the Chain of Command and charged to monitor and control this Agency of the Employer, should have properly recognized these adverse actions violated Plaintiff's established rights as a Police Officer working for the City of Newark.

52.    For all times relevant, there was supervisory action and higher ranked Defendants aided and abetted the discriminatory conduct on the part of the individual Defendants named to commit torts, or aid in the commission of torts, or to breach Plaintiff's known rights under the Collective Bargaining Agreement or Plaintiff would not have been terminated without notice of a police trial date.

53.    Furthermore, there was a breach of the covenant of good faith and fair dealing as the humiliating and harassing activities progressed against the Plaintiff notwithstanding the firm terms and conditions of the Collective Bargaining Agreement.

54.    Defendants' intentional breaches, including their own failures to give notice or investigate or prevent Plaintiff's wrongful termination, or deliberately placing Plaintiff under conditions of emotional stress and duress, caused Plaintiff damages and, ultimately, his job.

55.    As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, benefits and fringe benefits, promotions, and other quality of life benefits occurring for a career-bent Newark police officer.

56.    Additionally, as a proximate cause, Plaintiff is entitled to damages and all consequential damages that arise according to the usual course of things from the breach of his Contract, or as may fairly and reasonably be intended to issue out of the Contract.

12

57.     Plaintiff is entitled to punitive damages by reason there was a special relationship existing between the parties and duties imposed upon these wrongdoers as the named higher officials and Police Officers, who were cloaked with higher supervisory and monitoring authority to prevent such egregious wrongdoing.

WHEREFORE, Plaintiff demands judgment for:

a.      Damages, compensatory and punitive and interest accruing;

b.      attorney's fees;

c.      costs of suit;

d.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingus Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Captain Ronald Kinder, Lieutenant Palmar Amos, Lieutenant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10;

e.      for a Declaratory Judgment for reinstatement;

f.      for a Declaratory Judgment that the City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Jeffrey Thompson, contrary to the New Jersey LAD or other statutory provisions; and

g.      AND for such other relief as the Court may deem equitable and just.

## SECOND CAUSE OF ACTION

### (Discriminatory Hostile Work Environment)

58.    Plaintiff, Jeffrey Thompson, repeats and realleges the General Allegations and the First Cause of Action of the within Complaint, as if same were fully set forth at length herein.

59.    Had Plaintiff been perceived like Caucasian male police officers, he would not have been subjected to a discriminatory hostile work environment in the first instance nor mandated to try to participate in a false program of departmental charges, potential police trials and false write-ups for a permanent discipline record against him.

60.    The Defendants' agents have deliberately contravened the New Jersey Law Against Discrimination N.J.S.A. 10:5-1 to 10:5-42 and violated the Plaintiff's rights by reason that Plaintiff presents as a minority African American officer.  Further, there was no possible excuse for Defendants or their agents to implement a campaign of a discriminatory hostile work environment.

61.    From the time Thompson was out on sick leave, he was harassed and subjected to tormenting scenes, although he had proper medical notes for his sick leave.

62.    Caucasian employees were treated differently or permitted reasonable accommodation on their return, but not Thompson.

63.    Plaintiff's physician, who directed Plaintiff not to return to work after the second serious heart episode established that Lieutenant Ronald Kinder and Sergeant Palmar Amos were absolutely wrong in any belief that the physician had returned

Plaintiff to work.  A follow-up medical notation was made part of Plaintiff's records to correct the false record being made by these higher ranked officers.

64.    Nevertheless, Plaintiff became a victim of false charges, and the more he denied his wrongdoing for trumped up charges, the situation grew more hostile.

65.    For instance, there were false charges tracing back to September of 2005 but Plaintiff was not served any Complaint or charges of wrongdoing.  Sergeant Bezak pretended, at the time, that he could not serve Plaintiff, but Thompson was actually present in the workforce and working at the Second Bureau Precinct and readily available.

66.    Bezak ignored the truth of Plaintiff's availability and lied.

67.    There was a work-related knee injury during an arrest situation.  Another Officer, Juan Gonzalez, obtained his required medical treatment and sick leave for the same incident at September of 2005, but Plaintiff was treated different when he called out for medical leave.

68.    Thompson was caused to take medications prescribed by his own physician, when the Employer's City physicians would not react to his serious pain and sent him back to work.

69.    During October of 2005, the former Lieutenant Ronald Kinder (now promoted to Captain) falsely charged Plaintiff for violating General Order 94-4 requiring Plaintiff to call the Medical Service Department on separate occasions, but the former Lieutenant purposely failed to recall that Plaintiff was actually in his own office for those occasions so notice occurred in person.

15

70.     Plaintiff was ordered to sign a warning notice, which he reluctantly did, knowing that Lieutenant Kinder was intentionally misstating the facts.

71.     Plaintiff was always compliant to established protocol and procedures in contrast to Defendants or their agents.

72.     At a later event, the Defendant's City physician was caused to admit Plaintiff required MRI diagnostic testing relative to his knee. The results showed Plaintiff needed arthroscopic surgery for his right knee and procedures occurred on December 22, 2005.

73.     Before and after the procedure, Medical Services personnel kept targeting Plaintiff for a severe hostile work environment. As they did in the past, Lieutenant Kinder and Sergeant Amos, and others under their direction, confronted Plaintiff with false charges stating Plaintiff was still faking an injury.

74.     Supervisors running Medical Services, without any medical licensure or medical school training, had an attitude that Plaintiff was faking his medical condition and injuries. It became quite obvious they wanted to terminate Thompson.

75.     Over and over, Plaintiff was ordered back to work or threatened he would become terminated, despite physicians' notes or written instructions to remain on extended medical leave.

76.     No accommodation was offered for anymore light duty work, although the surgery had been necessary and the City physician knew that Plaintiff still required physical therapy before he could perform active work.

77.     The City physician always knew that Plaintiff had to be cardiac cleared in regard to his heart before he could possibly commence any physical therapy and stated

that directive to Plaintiff, but Thompson could not convince his superiors of their own physician's directive by reason of their intended discriminatory malfeasance and termination scheme.

78.    Instead, Defendants pretended Plaintiff's notes did not exist or he did not follow physicians' directives to return to work, although the written record showed their continued lies.

79.    Through these times, Plaintiff suffered being targeted as an African American employee different than his Italian or white/Caucasian counterparts by Superior Officers carrying out deliberate adverse action and writing him up for more discipline charges.  These higher ranked officers included the Deputy Chief Samuel DeMaio, Captain Ronald Kinder, Lieutenant Palmar Amos, Lieutenant Amilker Velez, Lieutenant Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Anthony Costa and others.

80.    Moreover, Plaintiff had faced orders from Lieutenant Kinder to report to the Internal Affairs Division to submit on these false charges.

81.    Plaintiff kept submitting on the false charges.  Some of his submissions had been accepted, but there had never been corrective action or any remedy.

82.    The facts are that Plaintiff was compromised by Defendants on October 22, 2005, October 24, 2005, October 28, 2005 and November 2, 2005 and for other times, with a particular focus between 2004 and 2006.

83.    As a proximate result of all the foregoing, Plaintiff became ill, despondent and anxious with panic attacks due to the constancy of work-related stress, and Plaintiff

submitted a competent medical note for his situation of emotional upset. He finally called out for stress on November 2, 2005.

84.  The situation, which was a severe and tormenting hostile work environment, was now permeating Plaintiff's home and even affecting his children, but this did not matter to Defendants.

85.  Internal Affairs Supervisors jumped on that perceived opportunity of Plaintiff's vulnerability to demand that Thompson report to the Psychiatric Department of University Hospital for evaluation.

86.  Lieutenant Derrick White actually appeared at Plaintiff's home on November 2, 2005, between 10:00 P.M. and 11:00 P.M. with an order for immediate report and, when Plaintiff explained he had no babysitter for his three (3) children, aged 5, 11 and 13, he was ordered to wake the children and actually take them with him to the University Hospital. Plaintiff explained that was impossible.

87.  Plaintiff agreed to follow the Lieutenant's order for evaluation on November 3, 2005. He went to University Hospital, as directed, for said evaluation and proved himself compliant. The erstwhile Sergeant Amos appeared at the hospital and ordered Plaintiff to report to Medical Services before they closed that day.

88.  At home, Plaintiff learned his youngest son's school personnel had called to inform Plaintiff that his 5 year old was missing from school and they urgently needed him to respond.

89.  The urgent circumstances of the lost boy were explained to the Employer's agents. Plaintiff began to search for his young son, which took time. On the

next day, Plaintiff went to Medical Services, but found the facility had closed earlier than usual and he sought to be rescheduled.

90.     Certainly, the Employer's agents from Medical Services knew Plaintiff had a very young missing son, but he was still written-up for new charges, although there was a timely explanation and sufficient proof Plaintiff signed into Medical Services.

91.     As aforesaid, on November 22, 2005, Claimant's right knee gave out and he fell.  Defendant's physician then permitted MRI testing and arthroscopic surgery occurred.

92.     Thompson reported to the Emergency Room at Saint Barnabas Medical Center.  He obeyed the physician's orders not to drive, walk or stand for more than 15 minutes, but the Employer's agents insisted Plaintiff had to re-appear for psychological evaluation, despite his physician's instructions.

93.     The conduct of Defendants has been severe and pervasive enough to make a reasonable African American man believe the conditions of his employment have altered, forever, and nothing would ever be done to protect him.

94.     For any time Plaintiff has been out for extended sick leave, Defendants treat him to discriminatory harassing adverse action and act for bad motives, race discrimination, retaliation or pretext.

95.     They act as if they have qualified immunity or permission of the City of Newark, John and Jane Does 1-10, or other Defendants to promulgate discriminatory harassment or a severe hostile work environment, but the laws are different.

96.     On December 6, 2005, Plaintiff's treating psychiatrist advised the Newark Police Department that Jeffrey Thompson could no longer be harassed while sick.

97.     Proper administrative submissions occurred on December 7, 2005 and December 24, 2005, but, as usual, nothing was done to protect Plaintiff or investigate his issues.

98.     Instead, Plaintiff received new administrative charges in the mail stating he violated sick leave policy for not being at home when contacted, but there was no specification of the actual times Plaintiff should have been contacted by Defendants because it did not occur.  Plaintiff knows because he was at home.

99.      The Employer's record of Plaintiff's wrongdoing has been made with knowing violations of their own General Orders, 94-4, and other directives and orders, including Agreements with the Union.

100.    For only one charge of neglect of duty, Plaintiff became informed a police trial was to be scheduled on February 10, 2006, although he was still out on sick leave.

101.    This was definitely against the established protocol, rules and regulations and, more particularly, when Plaintiff was subject to hospitalization with irregular heartbeat and chest pains.

102.    For these times, hospital and private physicians were still testing Plaintiff to determine the causes of his heart problems and he was still out on sick leave caused by the knee surgery, stress and heart.  By contract, any one of those medical conditions should have kept him out of work and free from threats of disciplinary termination.

103.    Plaintiff became punished, whereas other Defendants were advanced in the Employer's workplace or negligently and intentionally retained despite their blatant discriminatory activities and hostile work environment promulgated against him.  By way

of proof, Lieutenant Kinder was promoted to Captain; Sergeants Amos and Valez became Lieutenants.

104.   Behind the hostile work environment is likely an erroneous assumption that Plaintiff is no longer fit or competent to hold any job at the Second Bureau or any other Precinct of the Employer, but the facts are different.

105.   Defendants knew, or should have known, that other similarly situated employees have been offered indefinite sick leave, unlike Plaintiff.  Thompson has not been offered more light duty work, alternative work or subject to any testing of his performance skills, whatsoever.

106.   Instead, the blatant perception is that Plaintiff is now disabled sufficient enough to fire him under pretextural facts, but not deemed disabled so as to be protected at law, despite the regulatory methods, protocol and Contract protecting other police officers of the City of Newark.

107.   Had Plaintiff been deemed a white male police officer, he would not have been subject to this severe and outrageous discriminatory hostile work environment.

108.   The more Plaintiff has triumphed over Defendants' agents' false accusations and charges, those Defendants contrive discriminatory acts against him. The purpose of the discriminatory acts is always designed to bring on a constructive discharge (resignation) or retaliatory discharge so as to cease payments to Plaintiff and finally end his career.

109.   The resultant and cumulative effect of Defendants determining to impose these measures upon Plaintiff has been to keep Thompson ill and needing sick leave.

In essence, Plaintiff has suffered definite set backs through the deliberate and malicious goals of the Defendants herein.

110.   As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, benefits and fringe benefits, promotions, and other quality of life benefits occurring for a career-bent Newark police officer.  Plaintiff should also be entitled to damages, compensatory and punitive.

WHEREFORE, Plaintiff demands judgment for:

a.   Damages, compensatory and punitive and interest accruing;

b.   attorney's fees;

c.   costs of suit;

d.   for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingus Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Lieutenant Ronald Kinder, Lieutenant Palmar Amos, Lieutenant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10;

e.   for a Declaratory Judgment for reinstatement;

f.   for a Declaratory Judgment that the City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact

and otherwise protect against a discriminatory bias program being implemented against Jeffrey Thompson, contrary to the New Jersey LAD or other statutory provisions; and

g.     AND for such other relief as the Court may deem equitable and just.

## THIRD CAUSE OF ACTION

**(Discriminatory/Retaliatory Wrongful Termination)**

111.   Plaintiff, Jeffrey Thompson, repeats and realleges the General Allegations and the First Cause of Action and Second Cause of Action of the within Complaint, as if same were fully set forth at length herein.

112.   As aforesaid, Plaintiff, Jeffrey Thompson, confronted constant abusive and harassing activities between 2004 and 2006.   There was further reprisal to "paper" Plaintiff's record with false departmental charges without wrongdoing.

113.   Plaintiff submitted proper medical notes for times he was out of work.  The physician, who directed Plaintiff not to return to work after the second serious heart episode, established that Lieutenant Ronald Kinder and Sergeant Palmar Amos were absolutely wrong in their erroneous beliefs.  As the physician in charge, he offered a follow-up medical notation to correct the facts, again.

114.   It did not matter to these Defendants that the physician refuted their false facts.  Other felonious charges were issued, as per orders of Defendants Kinder and Amos, against the Plaintiff for continuing to call out sick.

115.   Basically, Plaintiff's medical condition became more complex through time based on work-related injuries, whether it be heart, stress or knee.  The City physician, along with Plaintiff's physicians and hospital physicians, knew that Plaintiff had to be

cardiac cleared before he could even commence physical therapy for his knee. Furthermore, the stress of an extreme hostile work environment was impacting Plaintiff.

116.    Defendants and their agents intentionally took advantage of Plaintiff's vulnerable status as an African American.  Thompson was being deliberately set up for a staged event of failings so as to be written up, and a termination program carried out..

117.    In this regard, Defendants (or their agents) intentionally promulgated stale disciplinary charges against Plaintiff in contravention of the 45 day rule, N.J.S.A. Sect. 40A:14-147 on at least two separate occasions.

118.    Plaintiff knew it made no sense and tried to dispute the charge(s) based on the facts and application of the 45 day rule, knowing the Employer, or its agents, could not press forward a pretextural fake record of I.O.P.'s, C.A.P.'s or any police trial beyond the 45 day rule, but he was ignored, as if an African American officer had no rights.

119.    Unquestionably, the 45 day rule remains operative, but Plaintiff could not obtain fair application of the rules.

120.    Plaintiff kept denying any wrongdoing, but he could not obtain any investigation for false, trumped up charges and reports being made against him.

121.    Instead, a police trial was to be scheduled for a single incident pertaining to June of 2005.  Defendants made plain their goals to impose a 90 day suspension upon Plaintiff if he did not admit to the charges.

122.    Thompson adamantly refused and timely appeared for a police trial.  He confronted the Employer's agents and advocates with the bitter truth that he was being

targeted as an African American for race discrimination and a wrongful termination scheme.

123.   Defendant's agents negotiated behind closed doors excluding him from any discussion for practically 7.5 hours.  He was told to take permanent disability or he would be terminated and he refused knowing he was only 34 years of age and needed to pursue his police career until retirement.

124.   In the end, there was a four day suspension for neglect of duty, i.e., failing to take a police report because the Defendants knew they could not terminate him, but more false charges issued, and Plaintiff did not have notice or opportunity to be heard in any other police trial for any potential pending charges against him.

125.   As done in the recent past, Captain Ronald Kinder, Lieutenant Palmar Amos, Lieutenant Amilker Velez, Lieutenant Umar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari and Sergeant Anthony Costa, filed or signed these new false charges against Plaintiff, knowing the pretext to get rid of Thompson.

126.   Meanwhile, the Commander of Internal Affairs, Captain Richard Cuccolo and the Commander of the Second Bureau, Captain Domingos A. Saldida, failed to investigate Plaintiff's submissions, complaints or grievances.

127.   Other Defendants had "toyed" with Plaintiff's career when they sat on the aforementioned Trial Board, and this included the Deputy Chief Gregg Quackenbush, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton and Caroline McIntosh.

128.   This time, Defendants pretended Plaintiff was not even entitled to be heard for the remaining charges, or to receive a Hearing date, although Ms. McIntosh

served as Assistant Corporate Counsel for the City of Newark and was purportedly placed on the Trial Board to ensure all the regulations were carried out.

129.   As known by all policymakers and decisionmakers for the City of Newark, charges against Plaintiff had to comport to the Collective Bargaining Agreement, General Orders, Attorney General Directives and Memorandum for non-discriminatory treatment, equal employment opportunities, and enforcement of the protocol, rules and regulations.  Moreover, the covenant of good faith and fair dealing was supposed to be an integral part of all police trial regulatory methods and the underlying Contract.

130.   For these times, the Employer's record of Plaintiff's wrongdoing has been made with knowing violations of their own General Orders, 94-4, and numerous other directives and orders or terms of the Collective Bargaining Agreement.

131.   For only one charge of neglect of duty, Plaintiff became informed a police trial was to be scheduled on February 10, 2006, although he was still out on sick leave. This was against the Rules and Regulations and, more particularly, since Plaintiff was subject to hospitalization with irregular heartbeat and chest pains.  (The Emergency Room and other physicians kept testing him to determine the causes of his heart problems and, then, would hospitalize him.)

132.   Furthermore, Defendants knew Plaintiff had become the subject of concern for a heart attack or stroke.  Thompson has been prescribed medications to allow him to be stress free and without pain, but Defendants kept causing Plaintiff enormous stress, suffering and anxiety.  It did not even stop when Plaintiff was wrongfully terminated on February 27, 2006.

133.   For two weeks after termination, Plaintiff continued to receive the same harassing telephonic communications from the Employer's agents.   At minimum, he obtained two telephone calls a day to determine whether he was home.   Plaintiff finally obtained relief when his Union advocate insisted that the telephone communications cease.

134.   From November 2, 2005, Plaintiff had never been cleared by any City Physician for return to work, and his private physicians, counselors or others had concurred that he could not be returned to work.

135.   Moreover, the causes for extended sick leave were separately traced to a work-related knee injury, stress, and, also, to Thompson's ongoing heart problems.   The Commanding Captains and Medical Services, took ongoing submissions from Plaintiff based on the discriminatory, adverse actions Plaintiff obtained for the times he reported to their precincts, as did Internal Affairs.

136.   Plaintiff's serious knee injury had required surgery and follow-up therapy was expected to keep him out of work for some reasonable length of time. Furthermore, Plaintiff's medical condition, including stress, was being definitely documented.   The recordkeeping establishes Plaintiff was hospitalized, over and over again, with in-patient stays.

137.   Plaintiff has been advised by his Union of his right to remain at home on private physicians' sick notes, or that of the City physicians, and he has complied to all his responsibilities for timely submissions, but his rights have been violated.

138.   As reprisal, Plaintiff received hourly, or frequent, daily telephone calls from the Employer's agents, which violates the extended sick leave policy and procedures and, also, a binding arbitration decision recently imposed on Defendants.

139.   On several occasions, Plaintiff was set up for entrapment, which is also harassing, or he has been followed, or notes were left on his vehicle.   This is intentionally done, although Plaintiff has been out on a valid sick leave.

140.   Moreover, the most recent events show Defendants (each and everyone) knew, at the time of all actions complained of, that they were violating Plaintiff's contract rights and they deliberately acted to harm him, knowing he was still out on extended sick leave.

141.   All Defendants' highest officials know Plaintiff has a legitimate property interest in his employment and not a mere expectation of continued employment by reason of his contract and N.J.S.A. Sect. 11A1-1 protecting all City of Newark policemen, through the Civil Service Act, from any termination without a showing of just cause, and only after receiving adequate notice and a full police trial.

142.   As aforesaid, Plaintiff's Hearing, a police trial at February 10, 2006, was not supposed to even occur, although he spent 7.5 hours in Newark.   Earlier discussions presented a decision that the charges would be dismissed if his partner accepted blame and suspension time, but, instead, Plaintiff and his partner received a four day suspension.

143.   Police trials were adjourned at two other times because Thompson was actually in the hospital, but no further notice was delivered or sent to Jeffrey Thompson

that all his other pending discipline charges would be deliberated in *absentia* without him.

144.   On February 24, 2006, Plaintiff found Sergeant Venancio at his home door at 7:10 P.M. to sign a receipt ordering Plaintiff to appear at a Fitness for Duty evaluation scheduled for March 1, 2006.  Then, on Monday, February 27, 2006, Thompson picked up a duplicate notification from the postal service repeating the same order to him.

145.   For these times, Plaintiff did not obtain any directives or orders to appear at a police trial on Monday, February 27, 2006.  Nothing was delivered to his home by way of messenger nor any certified postal mailings for any police trial, at all.

146.   Plaintiff avers that Defendants intended for him to receive any such notification, or proper due process recognition of his rights for all pending discipline charges.  Instead, his rights have been virtually eliminated to defend himself or be heard.

147.   Plaintiff is purportedly protected by firm Collective Bargaining Agreement provisions and Director's Memorandum, but Defendants (or their agents) dare to breach each applicable provision, procedure or regulation put in place to protect this Plaintiff and cover-up their wrongdoing.

148.   As aforementioned, Plaintiff has been literally rejected at Internal Affairs, Affirmative Action, and, for all his submissions, there have been evident breaches until he was finally terminated without notification and tried, in *absentia*, without just cause or any due process criteria.

149.   The City of Newark acted in bad faith with no real repeated violation of Department Code of any sort in order to carry out a discriminatory or retaliatory wrongful termination.

150.   As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, benefits and fringe benefits, promotions, and other quality of life benefits occurring for a career-bent Newark police officer.  Plaintiff should be entitled to damages, compensatory and punitive.

WHEREFORE, Plaintiff demands judgment for:

a.      Damages, compensatory and punitive and interest accruing;

b.      attorney's fees;

c.      costs of suit;

d.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingus Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Lieutenant Ronald Kinder, Lieutenant Palmar Amos, Lieutenant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10;

e.      for a Declaratory Judgment for reinstatement;

f.      for a Declaratory Judgment that the City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact

and otherwise protect against a discriminatory bias program being implemented against Jeffrey Thompson, contrary to the New Jersey LAD or other statutory provisions; and

g.    AND for such other relief as the Court may deem equitable and just.

## FOURTH CAUSE OF ACTION

### (Intentional Violation of Civil Rights and Constitutional Rights)

151.   Plaintiff, Jeffrey Thompson, repeats and realleges the General Allegations the First Cause of Action, Second Cause of Action and Third Cause of Action of the within Complaint, as if same were fully set forth at length herein.

152.   As aforementioned, Plaintiff was treated this way due to bad motives and race discrimination on the part of the Employer and individual Defendants, and, more particularly, due to retaliatory motives and pretext.

153.   Moreover, Plaintiff has a liberty interest worthy of procedural and substantive due process and a recognized Fourteenth Amendment violation for equal protection under the law.

154.   Further, Jeffrey Thompson has been stigmatized in the constitutional sense as an African American male, whether he is racially profiled to lose his job as a malingerer, or for faking illness, his reputation was ruined by the Employer taking such drastic action without due regard for due process or equal protection before terminating him.

155.   For these times, Plaintiff was subject to violation of his Federal Constitutional rights pursuant to Section 1983, 42 U.S.C. §1983, and he alleges claims under the Fourteenth Amendment and for pendent liability under the New Jersey Law Against Discrimination.

156.   There was always an intentional conspiratorial action of direct supervisors going all the way up the Chain of Command to the Employer's offices for aiding and abetting these violations, or Plaintiff would have obtained the proper investigations, Hearings, Notices for Police Trials required of Defendants.   Moreover, Plaintiff would have been cleared of repeated charges based on false, vague information, and (in)consistent errors undermining any decision for terminating him.

157.   Further, there would have been consideration for repeated sick leave policy violations, which would have put off any trial or Hearing or termination decision.

158.   Certainly, the City of Newark and all Defendants acted in bad faith, with known egregious official conduct calculated to be arbitrary and capricious in the constitutional sense.

159.   Defendants have abused their government authority through arbitrary termination of Plaintiff's employment and all his injuries and emotional upset were sustained within the scope of his duties.

160.   Defendants' entire paperwork against Plaintiff, including preliminary and final discipline, IOP's, CAP's and other reports or statements, are false and deliberate instruments of the Employer's/Defendants intent for oppression and termination results.

161.   Procedural and/or substantive due process rights have been implicated by deliberate City of Newark official failings, not mere negligence.

162.   Defendants sent their officials to Plaintiff's home to deliver messages and certified mail, but purposely deprived him of his property interests in his job without Hearings or trials, always threatening him that their power and authority exceeded his own, and he should, therefore, capitulate to their notions of his wrongdoing when they

were wrongdoers, themselves, trying to cover-up their egregious misconduct and illegal methods through the Chain of Command.

163.   Individuals looked to bootstrap their own promotions and advancements by following the lead of supervisory personnel. Medical Services and Internal Affairs purposely did nothing to alter this egregious misconduct, although the City physician finally recognized Plaintiff had a serious knee injury and heart condition. Thompson had to be cardiac cleared before his physical therapy could begin and Plaintiff could then be returned to work after that therapy.

164.   There is no meaning to Affirmative Action programs, as claimants are routinely turned down without any remedy or documentation of their Complaint.

165.   For all times mentioned, Plaintiff appeared in the workplace as a protected African American employee, but his rights were trampled and virtually eliminated.

166.   The City of Newark and the Newark Police Department pretends to put out Director's Memorandum from Anthony F. Ambrose, III, and to enforce the New Jersey Constitution, U.S. Constitution or Title VII, and other legislative mandates, whether it be pursuant to N.J.S.A. 10:5-1 to 10:5-42, N.J.A.C. 40A:14-118, or N.J.A.C. 40A:14-147 or N.J.S.A. Sect. 11A:1-1, but the Plaintiff's actual facts prove there is a cover-up and their written policies mean nothing.

167.   In all incidents impacting the Plaintiff, Defendants, including their Administrators, John or Jane Does 1-10 (or their agents), Anthony F. Ambrose or Irving Bradley (any or all of them) have failed to maintain the protocol, procedures, rules and regulations for the governing of their police force, Internal Affairs, Affirmative Action or

other agencies and, more importantly, for the discipline of its members adversely treating this Plaintiff.

168.   As aforedescribed, there has been mixed motives as to why employees like Defendants or their agents mistreating the Plaintiff have not been disciplined for conduct unbecoming a public employee, or, for discriminatory conduct constituting harassment or a retaliatory hostile work environment with false charges or ongoing threats of charges and, then, finally a termination decision without notice.

169.   For all these times, there has been no reasonable avenue of complaint for this Plaintiff, as if Defendants' agents intentionally violate his rights.

170.   The complained of conduct of all Defendants' agents would not have occurred but for Plaintiffs perceived vulnerability as an African American employee who can be ignored in their midst.  Other employees, desperate to play along for their own reasons, will hide the truth and participate as "Uncle Toms," themselves, to aid and abet.

171.   Defendants, including the Police Director, Anthony Ambrose III, and the Chief of Police, Irving Bradley, know there is an increase in the number of harassment complaints received at the Office of Affirmative Action from Departmental personnel, and their recent response has been to covertly encourage a failure of investigation and no response, only to frustrate Police Officers.

172.   Defendants, including John and Jane Does 1-10, do not properly train, supervise or monitor the Newark Police Department operations to prevent the foreseeable harm to Plaintiff, or otherwise act to protect him.

173.   Additionally, there is the City of Newark Municipal Council's failure to oversee the Newark Police Department in accord with N.J.S.A. 14-118, which is evident along with the past Mayor's diversions to other interests.

174.   As greater proof, Plaintiff was rejected at Internal Affairs and Affirmative Action offices and he was routinely ignored for all his complaints and grievances.

175.   There have not been any good faith efforts to comply with Federal, State, or local mandates regarding the protection of "human rights," civil rights or to prevent discrimination in Plaintiff's situation, or racial profiling as a malingerer who wants to be paid without working, although Plaintiff repeatedly rejected disability in light of the fact he was still qualified to work after his injuries would become resolved.

176.   For the times Plaintiff should have been subject to confidentiality or investigation of his complaints, his privacy and reputation has been totally exploited by the Employer's agents to the fullest extent possible to ruin him as a credible victim to work again as a career policeman, and Plaintiff is only 34 years of age.

177.   There was never any recognition of the Plaintiff's rights of any kind, nor to discipline the real wrongdoers with suspension, termination, referral for proper training for future work, despite the outrageous and egregious actions, inactions, omissions for proper notice and hearing before a termination decision.   There was a discriminatory malfeasance of Defendants and all their agents, as aforedescribed.

178.   As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, benefits and fringe benefits, promotions, and other quality of life benefits calculated for a career-bent Newark police officer.   Plaintiff is entitled to his full damages, compensatory and punitive.

WHEREFORE, Plaintiff demands judgment for:

a.      Damages, compensatory and punitive and interest accruing;

b.      attorney's fees;

c.      costs of suit;

d.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingus Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Lieutenant Ronald Kinder, Lieutenant Palmar Amos, Lieutenant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10;

e.      for a Declaratory Judgment for reinstatement;

f.      for a Declaratory Judgment that the City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Jeffrey Thompson, contrary to the New Jersey LAD or other statutory provisions; and

g.      AND for such other relief as the Court may deem equitable and just.

## FIFTH CAUSE OF ACTION

### (Conspiracy to Commit Tort or Aid the Commission of a Tort)

179.   Plaintiff, Jeffrey Thompson, repeats and realleges the First, Second, Third and Fourth Causes of Action, as if same were fully set forth at length herein.

180.   As aforesaid, Plaintiff was wrongfully terminated due to bad motives, retaliation and pretext, race discrimination on the part of the Employer and the numerous individual Defendants, who alternated between filing false charges, failing to investigate Plaintiff's complaints, and, then, conspired to have Plaintiff terminated.

181.   For the times mentioned, Plaintiff suffered a severe discriminatory animus, outrageous hostile work environment, retaliation and pretext through the actions of Captain Ronald Kinder, Lieutenants Palmar Amos, Amiker Velez, Abdul Hakeem, Manuel Carillo, Victor Cugliari, Sergeants Marlin Easter and Anthony Costa and/or others.

182.   Same discriminatory termination scheme could not have been accomplished without the involvement of the individual Defendants, John and Jane Does 1-10, including the Mayor, Administrator, City Council, and, more specifically, the Director Anthony Ambrose, Chief of Police Irving Bradley, Deputy Chiefs Samuel DeMaio and Gregg Quackenbush.

183.   This line of authority or Chain of Command was charged to monitor and responsibly control all police functions, including the Commander of Internal Affairs Captain Richard Cuccolo, the Commander of the Second Bureau Captain Domingos A. Saldida, Medical Service personnel (from the highest to the lowest ranked officer), and, also, to ensure that all those who sat on Trial Boards, including Deputy Chief Gregg Quackenbush, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline McIntosh or others made decisions in accordance with all the regulatory methods, protocol and procedures, including the Contract.

184.   From 2004 to 2006, Defendants intentionally conspired to commit torts, or aid in the commission of torta.  There was no logical reason to target Plaintiff for any Fitness for Duty Evaluation or repeated evaluations or to subject him to false write-ups, discipline charges or fail to give him notifications or a police trial to defend himself before termination.

185.   Defendants (each and everyone) knew or should have known all the consequences of their actions would cause harm to Plaintiff and, more particularly, based on his ongoing medical condition, whether it be heart, knee, stress or otherwise.

186.   There was not proper legal authority, legal justification or probable cause for their intentional conspiracy activities, to separately taunt, torment, threaten and severely harass this Plaintiff under all facts and circumstances, or to promulgate a false record of discipline.

187.   The aforenamed Defendants aided, abetted, assisted, and knowingly committed to unlawfully promulgate a false discipline record and, then, terminate Plaintiff against their rules and Contract provisions.

188.   Before termination, Plaintiff had a liberty and property interest to notification and a full police trial, but he was intentionally deprived of his substantive or due process rights in violation of the U. S. Constitution, Civil Service Act, N.J.S.A., Sect. 11A:1-1 and, also, his Collective Bargaining Agreement.

189.   The conspiracy was intentionally aimed to proximately cause wrongdoing and actually harmed the Plaintiff.

190.   The combination of Defendants was purposeful and common design to perpetrate torts for an unlawful purpose, or a purpose achieved by unlawful means and occurred through abuse of their authority.

191.   Plaintiff was deliberately targeted as a vulnerable African American Police Officer and it took bold lies and a false record to achieve this discriminatory or retaliatory termination.

192.   Each and every member of this conspiracy to commit a tort or aid the commission of these torts are equally and vicariously liable to the Plaintiff for causing him damage, and, special damages.

193.   Defendants (each and everyone) proximately caused adverse results by their tortious overt acts in furtherance of the conspiracy; and the Defendant Employer is, and, remains, liable to Plaintiff, *respondent superior*.

194.   Defendant, City of Newark, through its agents, including John and Jane Does 1-10, was possessed of full knowledge of the material facts seriously contemplated to harm Plaintiff and did nothing to oversee their Police Department operations or that of their specialized units or Agencies.

195.   In the final analysis, Plaintiff was planned to suffer as a victim, although he was a uniformed officer with a sufficient work history for years.

196.   As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, benefits and fringe benefits, promotions, and other quality of life benefits calculated for a career-bent Newark police officer.  Plaintiff is entitled to his full damages, compensatory and punitive.

WHEREFORE,  Plaintiff demands judgment for:

a.      Damages, compensatory and punitive and interest accruing;

b.      attorney's fees;

c.      costs of suit;

d.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingus Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Lieutenant Ronald Kinder, Lieutenant Palmar Amos, Lieutenant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10;

e.      for a Declaratory Judgment for reinstatement;

f.      for a Declaratory Judgment that the City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Jeffrey Thompson, contrary to the New Jersey LAD or other statutory provisions; and

g.      AND for such other relief as the Court may deem equitable and just.

## SIXTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

191.    Plaintiff, Jeffrey Thompson, repeats and realleges the First, Second, Third, Fourth and Fifth Causes of Action of the Complaint, as if same were fully set forth at length herein.

192.    The conduct of the Defendants, City of Newark Police Department, Lieutenant Ronald Kinder, Captain Samuel DeMaio, Captain Richard Cuccolo, Chief Irving Bradley, Police Director Anthony Ambrose, III, Captain Domingus A. Saldida, Sergeant Palmar Amos, Sergeant Anthony Costa, Sergeant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo and John and Jane Does 1-10, particularly during Plaintiff's last years of employment, 2004 to 2006, has been outrageous and extreme.

193.    The aforementioned intentional or negligent conduct of the Defendants, City of Newark Police Department, Lieutenant Ronald Kinder, Captain Samuel DeMaio, Captain Richard Cuccolo, Chief Irving Bradley, Police Director Anthony Ambrose, III, Captain Domingos A. Saldida, Sergeant Palmar Amos, Sergeant Anthony Costa, Sergeant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo and John and Jane Does 1-10, caused Plaintiffs to suffer severe extreme emotional distress.

194.    As further proof, Plaintiff was so emotionally upset that he could not focus on preparing for the Sergeant's examination, which was so important to his career, and he scored lower that his first attempt.

195.   The said conduct of the Defendants, Defendants, City of Newark Police Department, Lieutenant Ronald Kinder, Captain Samuel DeMaio, Captain Richard Cuccolo, Chief Irving Bradley, Police Director Anthony Ambrose, III, Captain Domingos A. Saldida, Sergeant Palmar Amos, Sergeant Anthony Costa, Sergeant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo and John and Jane Does 1-10, was calculated to cause and, in fact, did cause Plaintiff to suffer permanent severe emotional distress.

196.   As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, benefits and fringe benefits, promotions, and other quality of life benefits calculated for a career-bent Newark police officer.  Plaintiff is entitled to his full damages, compensatory and punitive and, more particularly, under all the facts and circumstances where Plaintiff was caused to sell his home for himself and his children by being put in dire financial circumstances.

WHEREFORE, Plaintiff demands judgment for:

a.      Damages, compensatory and punitive and interest accruing;

b.      attorney's fees;

c.      costs of suit;

d.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingos Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Lieutenant Ronald Kinder, Lieutenant Palmar Amos,

Lieutenant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10;

e.    for a Declaratory Judgment for reinstatement;

f.    for a Declaratory Judgment that the City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Jeffrey Thompson, contrary to the New Jersey LAD or other statutory provisions; and

g.    AND for such other relief as the Court may deem equitable and just.

## SEVENTH CAUSE OF ACTION

### (Defamatory Injury to Reputation)

197.    Plaintiff, Jeffrey Thompson, repeats and realleges the First, Second, Third, Fourth, Fifth and Sixth Causes of Action of the Complaint, as if same were fully set forth at length herein.

198.    Defendants, through their agents, have made false, defamatory statements of fact concerning the Plaintiff, which have been published to the community at large, along with City of Newark employees.

199.    In all instances relevant to possible Internal Affairs, Medical Services, or other Precinct or Agency investigation, the outcome was predictable to cover-up any search for the truth as to what really occurred to the Plaintiff and for the wrongdoing of the Defendants.

200.    Defendants have aided each other in their disloyalty to Plaintiff, who was a fellow officer and known to have a clean reputation unmarred by serious discipline

history.  Defendants  have  intentionally  misstated  the  facts  and  acted  in  reckless disregard of its truth or falsity to ruin Plaintiff forever in his career goals.

201.  As  proof,  Defendants'  entire  paperwork  against  Plaintiff,  including preliminary  and  final  discipline,  IOP's,  CAP's  and  other  reports  or  statements,  are patently  false  and  deliberate  instruments  of  the  Employer's/Defendants  intent  for oppression and termination results so that Plaintiff will never be hired for any municipal, government,  or private authority or entity.

202.  All statements regarding Plaintiff's last work history (including all events of wrongdoing) were not possibly made for a common interest or communicated under any reasonable belief that the Plaintiff would not be hurt in his career goals.

203.  Defendants' agents deliberately breached any policy of good faith and fair dealing such that the Plaintiff fears that he is, and, shall remain, compromised forever in his job quest or career goals.

204.  Without earnings, Plaintiff had to sell his home for himself and his children.

205.  As a proximate  result of the foregoing, Plaintiff has suffered damages, a severe  extreme  emotional  distress,  loss  of  wages,  benefits  and  fringe  benefits, promotions,  and  other  quality of life benefits calculated for a career-bent Newark police officer.  Plaintiff is entitled to his full damages, compensatory , punitive and/or special.

WHEREFORE,  Plaintiff demands judgment for:

a.  Damages, compensatory and punitive and interest accruing;

b.  attorney's fees;

c.  costs of suit;

d.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Director Anthony Ambrose, Chief Irving Bradley, Deputy Chief Samuel Demaio, Deputy Chief Gregg Quackenbush, Captain Richard Cuccolo, Captain Domingus A. Saldida, Captain Harvey Simpson, Lieutenant Tijuana Jones Burton, Caroline Mcintosh, Lieutenant Ronald Kinder, Lieutenant Palmar Amos, Lieutenant Amilker Velez, Lieutenant Ulmar Abdul Hakeem, Lieutenant Manuel Carillo, Lieutenant Victor Cugliari, Sergeant Marlin Easter, Sergeant Anthony Costa and John and Jane Does 1-10;

e.      for a Declaratory Judgment for reinstatement;

f.      for a Declaratory Judgment that the City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Jeffrey Thompson, contrary to the New Jersey LAD or other statutory provisions; and

g.      AND for such other relief as the Court may deem equitable and just.

Dated:  April 25, 2006                  Law Offices of
                                        WENDIE  L. ELOVICH, P.A.
                                        Attorney for Plaintiff


                                        By:_____
                                          WENDIE  L. ELOVICH, ESQ.

## DESIGNATION OF COUNSEL

Pursuant to Federal Rules, Wendie L. Elovich, Esq. is hereby designated as Trial

Counsel for the Plaintiff in the within matter.

Dated:  April 25, 2006

_____ _____
WENDIE L. ELOVICH, ESQ. (8743)
180 White Road, Suite 204
Little Silver, New Jersey   07739
(732) 842-3224
Attorney for Plaintiff

**CERTIFICATION OF VERIFICATION AND NON-COLLUSION**

1.      I am the Plaintiff in the foregoing Complaint to which this is annexed.

2.      The allegations of the Complaint are true to the best of my knowledge and belief. The Complaint is made in truth and good faith and without collusion for the acts set forth therein.


I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  April 25, 2006


_____
JEFFREY THOMPSON