<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEFFREY THOMPSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  06-2028 (SRC) |
| | : | |
| ˙v | : | **OPINION** |
| | : | |
| CITY OF NEWARK POLICE DEPARTMENT, et al., | : | |
| | : | |
| Defendants. | : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on two motions: 1) the motion for partial summary judgment (Docket Entry No. 32), pursuant to Federal Rule of Civil Procedure 56, by Plaintiff Jeffrey Thompson ("Thompson"); and 2) the motion for summary judgment (Docket Entry No. 33), pursuant to Federal Rule of Civil Procedure 56, by Defendants Domingus Saldida, Harvey Simpson, Tijuana Jones Burton, Caroline McIntosh, Ronald Kinder, Palmar Amos, Amilker Velez, Ulmar Abdul Hakeem, Manuel Carillo, Victor Cugliari, Marlin Easter, Anthony Costa, City of Newark Police Department, Anthony Ambrose, Irving Bradley, Samuel Demaio, Gregg Quackenbush, and Richard Cuccolo (collectively, "Defendants").  For the reasons set forth below, Plaintiff's motion for partial summary judgment will be denied, and Defendants' motion for summary judgment will be granted in part and denied in part.

## BACKGROUND

This case arises out of an employment dispute. The following facts are undisputed. Briefly, Plaintiff was a police officer employed by Defendant City of Newark Police Department (the "State"). The remaining individual Defendants were officers and management personnel in the City of Newark Police Department. On February 27, 2006, Plaintiff's employment was terminated after a hearing at which he was not present. Plaintiff then appealed his termination to the State of New Jersey's Merit System Board, which transmitted the matter to the Office of Administrative Law. Administrative Law Judge James A. Geraghty (the "ALJ") conducted hearings on the appeal. On September 20, 2007, ALJ Geraghty issued his decision and dismissed Plaintiff's appeal.

On May 1, 2006, Plaintiff initiated the instant suit by filing the Complaint, asserting seven causes of action: 1) breach of contract; 2) discriminatory hostile work environment; 3) discriminatory/retaliatory wrongful termination; 4) intentional violation of civil rights and constitutional rights; 5) conspiracy to commit tort or aid in the commission of a tort; 6) intentional infliction of emotional distress; and 7) defamatory injury to reputation.

Presently before the Court are summary judgment motions filed by both sides. Plaintiff has moved for "partial summary judgment for wrongful termination and reinstatement." (Pl.'s MSJ Br. 1.) Defendants have moved for summary judgment on the Complaint in its entirety.

## ANALYSIS

**I.    Legal Standard**

    A.    Motion for summary judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party

demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that

creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II. The motions for summary judgment

Defendants move for summary judgment on the Complaint in its entirety, contending that, as a whole, there is an absence of evidence to support Plaintiff's case. Because Plaintiff bears the burden of proof of the claims in the Complaint at trial, at summary judgment, the burden now shifts to Plaintiff. Rule 56(e) requires that the opposing party "set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Defendants characterize the Complaint as containing "often unclear, vague, repetitive

causes of action, legal arguments and facts." (Defs.' MSJ Br. 6.) This is a fair statement and describes Plaintiff's briefs as well as the Complaint. This Court has carefully examined Plaintiff's submissions and, despite finding that they are often difficult to follow, concludes that, as to all claims arising under federal law, Plaintiff has failed to defeat Defendants' motion for summary judgment.

The Complaint asserts seven causes of action. The Fourth cause of action alleges intentional violation of civil rights and federal Constitutional rights. Of the other claims in the Complaint, only the Fifth cause of action refers to a claim arising under federal law (Compl. ¶ 188), but this duplicates the claims for violation of federal Constitutional due process rights asserted in the Fourth cause of action. Aside from the duplicative part of the Fifth cause of action, all of Plaintiff's federal claims are contained in the Fourth cause of action.

As Defendants contend, the Fourth cause of action of the Complaint is vague and rambling, with allusions to a wide range of possible federal Constitutional violations. Plaintiff's opposition to Defendants' motion for summary judgment asserts claims for violation of Constitutional rights, pursuant to 42 U.S.C. § 1983, based on: 1) the right to due process of law; 2) the right to equal protection under the law; and 3) municipal liability based on policy or custom that violates federal Constitutional rights.

      A.     <u>The Constitutional right to due process of law</u>

Despite the vagueness of the briefing, Plaintiff is clearly heard to complain in his opposition brief that, during his employment termination, his Constitutional rights to procedural due process of law were violated. The Supreme Court has summarized the fundamental principles of procedural due process protections as follows: "The applicability of the

5

constitutional guarantee of procedural due process depends in the first instance on the presence of a legitimate 'property' or 'liberty' interest within the meaning of the Fifth or Fourteenth Amendment. Governmental deprivation of such an interest must be accompanied by minimum procedural safeguards, including some form of notice and a hearing." Arnett v. Kennedy, 416 U.S. 134, 164 (1974).

Consequently, "[t]o state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-234 (3d Cir. 2006) (quotation omitted).

       *1.*     *Due process protection of Plaintiff's property interest*

The parties do not dispute that Plaintiff's employment termination deprived him of a property interest protected by the due process clause. At issue is whether the termination process provided by the State satisfied the Constitutional requirements for procedural due process.

The pertinent facts are not in dispute. On January 31, 2006, the State issued a Preliminary Notice of Disciplinary Action, notifying Plaintiff that it contemplated removing him from his position. This Notice was sent to Plaintiff by certified mail. Plaintiff never received the Notice, which the United States Postal Service returned to the State. On February 27, 2006, the State held a hearing and conducted a trial. Plaintiff did not attend. He was tried in absentia and his position was terminated, effective that day. Plaintiff then appealed his termination to the State of New Jersey's Merit System Board, which transmitted the matter to the Office of Administrative Law. Administrative Law Judge James A. Geraghty (the "ALJ") conducted

hearings on the appeal.  At the hearing held on May 23, 2007, Plaintiff appeared and was heard.

On September 20, 2007, ALJ Geraghty issued his decision.  The ALJ stated that Plaintiff had failed, without excuse, to appear at hearings held on May 3 and May 10, 2007, and that, when he did appear on May 23, 2007, "appellant gave a self-serving provocative speech and dashed from the court room, needless to say, without leave."  (Pennington Decl. Ex. Q at 15.) The ALJ decided that Plaintiff had abandoned the proceedings, had failed to prosecute his appeal, and that the appeal should be dismissed.  (Id. at 16.)

Plaintiff contends that his federal due process rights were violated because he did not receive notice and the opportunity to be heard prior to his termination on February 27, 2006. Defendant contends that Plaintiff was notified and refused to attend the hearing.

Plaintiff's position relies on the assumption that due process requires that Plaintiff receive actual notice.  This is incorrect.  The Supreme Court set forth the fundamental due process requirements for notice in Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950): "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Under Mullane, due process does not require actual notice:

> The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.

Id. at 315.  See also Dusenbery v. United States, 534 U.S. 161, 168 (2002) ("Since *Mullane* was decided, we have regularly turned to it when confronted with questions regarding the adequacy of

7

the method used to give notice"); Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 797 (1983) ("In subsequent cases, this Court has adhered unwaveringly to the principle announced in *Mullane*"); SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin), 530 F.3d 230, 239 (3d Cir. 2008) (relying on the "reasonably calculated" test of Mullane).

Furthermore, in Mullane, the Supreme Court held that notice by mail satisfied the requirements of due process. 339 U.S. at 318; see also Mennonite Bd., 462 U.S. at 800. In the instant case, there is no dispute that the State sent Plaintiff notice of the termination hearing by mail. Plaintiff does not argue that this notice fails to meet the "reasonably calculated to apprise" standard under Mullane. There is no disputed material fact here to preclude judgment as a matter of law. The State sent Plaintiff notice of the termination hearing by mail. Such notice was reasonably calculated to apprise Plaintiff of the hearing and to afford him the opportunity to present his objections. The State satisfied the Constitutional requirements of procedural due process. As to Plaintiff's § 1983 claim for violation of his right to procedural due process, Defendant's motion for partial summary judgment will be granted.[1]

---

[1] Moreover, assuming, arguendo, that Plaintiff did not receive adequate notice of the pre-deprivation hearing, it is clear under Third Circuit law that he abandoned any such claim by the manner in which he sought to appeal the decision: "[T]he availability and validity of any pre-deprivation process must be analyzed with reference to the context of the alleged violation and the adequacy of available post-deprivation procedures." Reilly v. City of Atl. City, 532 F.3d 216, 236 (3d Cir. 2008). A plaintiff may not refuse procedural remedies made available to him and then look to the federal court for redress:

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. [A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. A due process violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. If there is a process on the

        *2.*      *Due process protection of Plaintiff's liberty interest*

The Fourth cause of action in the Complaint raises the issue of due process protection of Plaintiff's liberty interest, alleging that Plaintiff "had become stigmatized in the constitutional sense, as an African American male, whether he was racially profiled to lose his job as a malingerer, or for faking illness, his reputation was ruined by the Employer taking such drastic action without due regard for due process or equal protection before terminating him." (Compl. ¶ 154.) Defendants move for summary judgment, and contend as well that this claim should be dismissed for failure to state a valid claim for relief. Plaintiff's opposition does not address the due process stigmatization claim. Nor does Plaintiff's brief in support of Plaintiff's motion for partial summary judgment argue this issue. In fact, none of the briefs submitted by Plaintiff in connection with the two summary judgment motions addresses the due process stigmatization claim.

In Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971), the Supreme Court held that, when government action puts a person's reputation at stake, a right to due process accrues:

---

    books that appears to provide due process, the plaintiff cannot skip that process
    and use the federal courts as a means to get back what he wants.

Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). This speaks clearly to the instant matter. Plaintiff does not dispute that he abandoned the appeal process. In fact, Plaintiff states: "The situation of hardship became so extreme given Judge Geraghty's numerous rulings that Plaintiff was caused to end the proceeding." (Pl.'s Opp. to Defs.' 56.1 Stmt. ¶ 93.) Because Plaintiff concedes that he ended the appeal proceeding, under Alvin, there cannot be an actionable due process violation because Plaintiff refused to avail himself of the procedural protection available. "[T]aking advantage of available processes is . . . akin to an element of the claim." Reilly, 532 F.3d at 235. Plaintiff has thus failed to prove an essential element of his claim under § 1983 for violation of his right to procedural due process. This provides an additional basis to find that, as to Plaintiff's claim under § 1983 for violation of his right to procedural due process, Defendants' motion for partial summary judgment should be granted.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."  Courts have understood this to implicate due process protection of a liberty interest.  Under Third Circuit law, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." Kutztown, 455 F.3d at 236.  The Third Circuit refers to this as the "stigma-plus" test.  Id.  Furthermore, the Circuit has explained:

> In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest.  The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the "plus."  When such a deprivation occurs, the employee is entitled to a name-clearing hearing. . . To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly and (2) were false.

Id. (citations omitted).

In view of the fact that none of Plaintiff's briefs addresses the issue of due process protection of reputation, this Court finds that Plaintiff has abandoned this claim.  As to Plaintiff's due process claim for deprivation of a liberty interest in reputation, Defendants' motion for partial summary judgment will be granted.

Furthermore, Defendants contend correctly that the Complaint fails to state a valid claim for stigmatization pursuant to § 1983.  The Complaint does not allege that the State made public stigmatizing statements in connection with the termination, as required under Kutztown.  Rather, the Complaint states only that Plaintiff's reputation was "ruined by the Employer taking such drastic action without regard for due process or equal protection before terminating him."

(Compl. ¶ 154.) This fails to allege that the State created **and disseminated to the public** a false and defamatory impression about the employee in connection with his termination. Thus, were this Court not granting Defendants' motion for partial summary judgment as to this claim based on the finding that Plaintiff has abandoned it, it would dismiss this claim with prejudice for failure to state a valid claim for relief.

### 3. *Substantive due process*

In passing, Plaintiff mentions violation of his rights to substantive due process, although he never develops any argument in support. "[P]ublic employment is not a fundamental right entitled to substantive due process protection." Kutztown, 455 F.3d at 235. To the extent that Plaintiff claims violation of his rights to substantive due process under § 1983, Defendants' motion for partial summary judgment will be granted.

### B. The Constitutional right to equal protection of the law

The Fourth cause of action of the Complaint also makes passing reference to violation of the Fourteenth Amendment right to equal protection of the law. (Compl. ¶ 153.) A heading in Plaintiff's brief in opposition to Defendants' motion for summary judgment asserts a violation of the equal protection clause, but the brief contains no argument. (Pl.'s Opp. Br. 37.) This Court cannot discern any argument in support of a claim for violation of Plaintiff's right to equal protection of the law and concludes that, to the extent that the Complaint asserted such a claim, Plaintiff has abandoned it.

### C. Municipal liability under Monell

Plaintiff's opposition brief argues that the municipality is liable for violations of Plaintiff's Constitutional rights based on a policy and custom, pursuant to Monell v. Dep't of

11

Soc. Servs., 436 U.S. 658, 692 (1978). While the Complaint does not clearly articulate a Monell claim, Defendants have not asked this Court to disregard Plaintiff's argument for lack of foundation in the Complaint. This Court will address the claim as articulated by Plaintiff in the opposition brief.

The first difficulty for Plaintiff, however, is that this Court cannot discern in the opposition brief a complete argument for municipal liability under Monell. Plaintiff offers fragmentary arguments regarding municipal policy or custom along two lines. First, Plaintiff alleges a broad failure within the City of Newark to supervise and train personnel with regard to the sick leave policy. Second, Plaintiff alleges that the Internal Affairs Division of the City of Newark Police Department has failed to investigate supervisory misconduct.

Theories of municipal liability under Monell are based on violations of 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has set forth the following principles for establishing a violation of 42 U.S.C. § 1983, based on a theory of municipal liability through municipal policy:

> [I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury. Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant

> practice is so widespread as to have the force of law. . .
>
> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. . .

Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Thus, to make a claim for municipal liability under Monell, a plaintiff must both identify conduct attributable to the municipality and prove that this conduct manifests culpability and causality sufficient for the imposition of municipal liability.

Furthermore, when the theory of municipal liability rests on an alleged failure to act affirmatively, plaintiff must also prove deliberate indifference by the policymakers of the municipality, under the principles established by the Supreme Court in City of Canton v. Harris, 489 U.S. 378, 385 (1989). In Canton, the Court considered whether inadequate police training could be the basis for § 1983 liability for a municipality. Id. at 388. The Court first asked whether the training program was adequate. Id. at 390. Concluding that it was not adequate, the Court asked whether the inadequacy of the program could be said to represent a policy of the municipality. Id. The Court held that the need for better training must be so obvious, "and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390. The municipality is liable under § 1983 only when its failure to act "reflects a 'deliberate' or 'conscious' choice." Id. at 389.

Following the principles set forth in Canton, the Third Circuit has articulated the legal

13

test of § 1983 municipal liability for failure to act affirmatively as follows:

> a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (citation omitted).

Plaintiff's briefs cite Monell and appear to invoke a Monell claim: "the City has established both policy and custom for violating Thompson's rights." (Pl.'s Reply Br. 5.) Yet Plaintiff's case for municipal liability under Monell contains more holes than substance. To start with, this Court must ask what particular constitutional injury is at issue here. The heading for the first section of the opposition brief arguing for Monell liability states: "Plaintiff was Discharged without Notification and Opportunity to a Timely Hearing in Violation Of His Constitutional Rights to Procedural and Substantive Due Process." (Pl.'s Opp. Br. 37.) In the second section arguing for Monell liability, Plaintiff contends that the injury is "deprivation of liberty without due process." (Pl.'s Opp. Br. 38.) This appears to refer to the stigmatization injury. Yet clarity on the question of the specific injury does not appear to materially affect the outcome. Because this Court has found in favor of Defendants on all of Plaintiff's claims for violation of his substantive and procedural due process rights, Plaintiff cannot prevail on a claim for municipal liability when the underlying claims have been resolved in favor of Defendants. This point alone mandates that Plaintiff's Monell claims must fail, but there are other major problems as well.

As to Plaintiff's claim that the City of Newark failed to supervise and train personnel with regard to the sick leave policy, Plaintiff does not identify the specific actions which

14

evidence the municipality's failure to supervise and train personnel about the sick leave policy. Plaintiff contends that the Police Department erred in its administration of the sick leave policy, but, even if this Court were to accept that the Police Department so erred, Plaintiff has produced no evidence that such erroneous administration was caused by the municipality's failure to supervise and train personnel regarding the sick leave policy. It is crucial under the law to show that the municipality is sufficiently culpable.

Furthermore, Plaintiff does not even argue that the need to train and supervise employees with regard to the sick leave policy was "so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584. Lastly, Plaintiff does not explain how the failure to supervise and train employees with regard to the sick leave policy caused him to suffer an injury of Constitutional proportions. In fact, this Court does not even perceive any causal relation between failures to train and supervise personnel with regard to the sick leave policy and Plaintiff's termination – no less any violation of Constitutional rights connected to the termination.

Similar problems arise when considering Plaintiff's claim that the Internal Affairs Division failed to investigate Plaintiff's complaints. Plaintiff has submitted a number of documents that relate to sick leave discipline he received and Plaintiff's complaints about it. (Pl.'s Opp. to Defs.' Stmt. of Facts Exs. O, Q, Z.) The gist of the complaints is that the Police Department's conduct toward Plaintiff regarding sick leave was unfair and unwarranted, and evidenced racial discrimination. Even if, for the sake of argument, this Court were to accept as true that the Internal Affairs Division failed to investigate Plaintiff's complaints in regard to the

sick leave discipline he received, Plaintiff does not articulate, nor does this Court perceive, how such a failure was "so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584. Again, Plaintiff does not explain, nor does this Court perceive, the causal connection between the alleged failure of the Internal Affairs Division to investigate Plaintiff's complaints about his sick leave discipline and the matter of whether Plaintiff was accorded due process at his termination. Plaintiff does not even assert that the Internal Affairs Division had any involvement with his termination process. Plaintiff does not present a theory of how such investigations would have produced any changes in the due process protections available at his termination (notice and the opportunity to be heard).

Under Brown, Plaintiff must prove that the "municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. . . " 520 U.S. at 403. Moreover, the Supreme Court has made clear that, when considering claims for municipal liability under Monell, courts must apply a stringent standard of causation:

> Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability. As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights. A failure to apply stringent culpability and causation requirements raises serious federalism concerns, in that it risks constitutionalizing particular hiring requirements that States have themselves elected not to impose. *Cf. Canton v. Harris*, 489 U.S. at 392.

Brown, 520 U.S. at 415. Under this stringent standard, "for liability to attach . . . the identified deficiency . . . must be closely related to the ultimate injury." Canton, 489 U.S. at 391.

16

Plaintiff's failure to establish any case for municipal § 1983 liability connected to the sick leave policy or investigation practices is particularly evident in light of the stringent legal tests of causation applied in Canton and Brown.  Plaintiff does not even raise the relevant issues, no less demonstrate that the evidence would allow a jury to decide in his favor, as to whether the municipality acted with the requisite culpability and legally caused the alleged injury.

The Supreme Court has stated that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410.  Plaintiff has not offered evidence from which a reasonable jury could conclude that the municipality acted with deliberate difference.  This provides another reason why Plaintiff's Monell claims must fail.

In sum, Plaintiff fails to articulate a coherent argument for municipal liability under Monell, nor does he outline the elements of such a claim, nor, as to all such elements, does he provide "sufficient evidence to allow a jury to find in [his] favor at trial." Gleason, 243 F.3d at 138.  Plaintiff has failed to defeat Defendants' motion for partial summary judgment.  As to Plaintiff's claims for municipal liability for violations of his Constitutional rights, Defendants' motion for partial summary judgment will be granted.

This Court has now addressed all claims in the Complaint arising under federal law and finds that Plaintiff has failed to defeat Defendants' motion for summary judgment on these claims.  This Court will grant Defendants' motion for summary judgment as to all federal claims in the Complaint, and judgment on all claims under federal law will be entered in Defendants' favor.  Only claims under state law will remain.  As none of Plaintiff's federal claims will remain, this Court exercises its discretion not to retain supplemental jurisdiction over the

remaining state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [once] the district court has dismissed all claims over which it has original jurisdiction").  The Third Circuit has explained that "once all federal claims have been dropped from a case, the case simply does not belong in federal court."  New Rock Asset Partners, L.P. v. Preferred Entity Advancements, 101 F.3d 1492, 1504 (3d Cir. 1996) (quoting Lovell Mfg. v. Export-Import Bank, 843 F.2d 725, 734 (3d Cir. 1988)). Nor are there any circumstances present which would make the exercise of the Court's discretion to retain supplemental jurisdiction appropriate.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966).  Pursuant to Federal Rule of Civil Procedure 12(h)(3), the remaining state law claims in the Complaint will be dismissed for lack of subject matter jurisdiction.  This moots the remaining aspects of Defendants' motion for summary judgment, which will be denied in part, as well as Plaintiff's motion for partial summary judgment, which will be denied.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Docket Entry No. 33) is granted in part and denied in part. As to all federal claims in the Complaint, including but not limited to the Fourth cause of action, Defendants' motion for summary judgment is **GRANTED**, and judgment is entered in Defendants' favor on these claims. The remaining state law claims in the Complaint are **DISMISSED** for lack of subject matter jurisdiction. As to the state law claims in the Complaint, Defendants' motion for summary judgment is **DENIED**. Plaintiff's motion for partial summary judgment (Docket Entry No. 32) is **DENIED**.

    s/ Stanley R. Chesler
    STANLEY R. CHESLER, U.S.D.J.

Dated: March 20, 2009